UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAWN GARRETT BAUTISTA,

    Plaintiff,

  v.

JIM BABCOCK, etc.; et al.,

    Defendants.
                                       /

No. C 04-187 SI (pr)

**ORDER DENYING MOTIONS AND SETTING BRIEFING SCHEDULE**

A.    <u>Introduction</u>

Shawn Garrett Bautista, in custody at the Santa Clara County Jail, filed this <u>pro se</u> civil rights action under 42 U.S.C. § 1983. The court determined that the complaint alleged cognizable § 1983 claims against defendants Turbovich, Ramirez, and Hodges for retaliation. Defendants moved for summary judgment. In response, Bautista moved to compel discovery and to delay filing his opposition to the motion for summary judgment until he has received discovery responses. Several problems in the parties' briefs lead the court to deny the motions.

B.    <u>Defendants' Motion For Summary Judgment</u>

Defendants' motion for summary judgment presents a confused view of the law of retaliation. First, the brief errs in suggesting that the allegedly retaliatory actions must violate a constitutional right. It is well-settled that a plaintiff asserting a retaliation claim need not show that the retaliatory action taken in response to his exercise of a constitutional right independently deprived him of a constitutional right. <u>See, e.g.</u>, <u>Mt. Healthy City Bd. of Educ. v. Doyle</u>, 429

1  U.S. 274, 283 (1977) (absence of right to continued employment does not defeat claim for
2  retaliatory firing for First Amendment expression); <u>Vignolo v. Miller</u>, 120 F.3d 1075, 1078 (9th
3  Cir. 1997) (discharge from prison job for refusal to waive constitutional right states claim despite
4  no constitutional right to prison job); <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995)
5  (retaliatory transfer would be actionable even though inmate has no constitutional right to be
6  held in a particular location or in a single cell). Despite this settled state of the law, defendants
7  repeatedly argue that their allegedly retaliatory conduct did not rise to the level of a
8  constitutional violation. They argue that the alleged threats do not give rise to a claim under §
9  1983, <u>see</u> Motion, p. 11,[1] and that inmates have limited constitutional rights to have erroneous
10 information expunged from their prison file, Motion, p. 11, and to have a particular
11 classification, <u>id.</u> at 12. That an inmate has no independent constitutional right to be free from
12 threats, to have accurate records or to have any particular classification says nothing about
13 whether depriving the inmate of these things for a retaliatory purpose can amount to a
14 constitutional violation. At best, defendants' arguments show that Bautista has no claims other
15 than his retaliation claims; at worst, they mislead by framing the retaliation debate incorrectly.

16  Second, the brief presents an inaccurate legal description regarding the harm or injury
17 required for a retaliation claim. Defendants contend that they are entitled to summary judgment
18 because the allegedly retaliatory conduct did not have a chilling effect on Bautista, as evidenced
19 by his continued litigiousness. This argument overlooks several Ninth Circuit cases that suggest
20 that the prisoner's continued litigation or grievance-filing activity is not a bar to a successful
21 retaliation claim. <u>Rhodes v. Rowland</u>, 408 F.3d 559, 568-69 (9th Cir. 2005), rather clearly states
22 that the fact that the prisoner continues with his First Amendment activity does not mean there
23 has not been a chilling effect. Although <u>Rhodes</u> was decided after defendants' motion was filed,
24 Ninth Circuit cases on the books before defendants' motion was filed also indicate that harm that
25 is more than minimal will almost always have a chilling effect sufficient for a retaliation claim.

---

[1] The two cases defendants cite on this point, <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996), and <u>Gaut v. Sunn</u>, 810 F.2d 923, 925 (9th Cir. 1987), are not even retaliation cases, and do not appear to stand for anything relevant to a retaliation claim.

2

1 See, e.g., Gomez v. Vernon, 255 F.3d 1118, 1127-28 (9th Cir. 2001); Hines v. Gomez, 108 F.3d
2 265 (9th Cir. 1997). Hines explained that the injury may be the retaliatory act's chilling effect
3 on the inmate's First Amendment rights, even if there is no demonstration of a more substantial
4 injury. Id. at 269. Rhodes stated that, at least at the pleading stage, the proper inquiry is
5 "'whether an official's acts would chill or silence a person of ordinary firmness from future First
6 Amendment activities.' . . . Because 'it would be unjust to allow a defendant to escape liability
7 for a First Amendment violation merely because an unusually determined plaintiff persists in his
8 protected activity,' [the prisoner] does not have to demonstrate that his speech was 'actually
9 inhibited or suppressed.'" Rhodes, 408 F.3d at 568-69 (internal citations omitted). Defendants
10 are incorrect to the extent they suggest Bautista does not have an actionable retaliation claim
11 because he continued to file grievances.

12      In light of these problems in defendants' motion, and the prisoner-plaintiff's limited
13 access to legal materials, the court is unwilling to decide the motion for summary judgment as
14 presented. A litigant's misstatement of the law is always a concern to the court, but especially
15 so in a case where the opponent is a pro se prisoner because it raises something akin to a notice
16 problem: a pro se prisoner untrained in law and with very limited access to legal materials might
17 not recognize his opponent's legal error and might simply attempt to prove his case within the
18 framework set up by opposing counsel's motion. For this reason, defendants' motion for
19 summary judgment will be denied, but without prejudice to defendants filing a new motion for
20 summary judgment that correctly states the law of retaliation and frames the dispute in a way
21 that the court can decide the motion based on the parties' presentations.

22

23 C.    Bautista's Motion To Compel Discovery

24      The glaring problem in Bautista's motion to compel is that he did not make a good faith
25 effort to meet and confer before seeking court intervention in the discovery dispute.

26      The court generally is not involved in the discovery process and only becomes involved
27 when there is a dispute between the parties about discovery responses. Discovery requests and
28 responses normally are exchanged between the parties without any copy sent to the court. See

3

Fed. R. Civ. P. 5(d) (listing discovery requests and responses that "must not" be filed with the court until they are used in the proceeding or the court orders otherwise).  Only when the parties have a discovery dispute that they cannot resolve among themselves should the parties even consider asking the court to intervene in the discovery process.  The court does not have enough time or resources to oversee all discovery, and therefore requires that the parties present to it only their very specific disagreements.  To promote the goal of addressing only very specific disagreements (rather than becoming an overseer of all discovery), the court requires that the parties meet and confer to try to resolve their disagreements before seeking court intervention. See Fed. R. Civ. P. 37(a)(2)(B); N. D. Cal. Local Rule 37.  Where, as here, one of the parties is a prisoner, the court does not require in-person meetings and instead allows the prisoner and defense counsel to meet and confer by telephone or exchange of letters.  Although the format of the meet-and-confer process changes, the substance of the rule remains the same: the parties must engage in a good faith effort to meet and confer before seeking court intervention in any discovery dispute.

Bautista's meet-and-confer letter to defense counsel was simply ridiculous in its assertion that defendants "waived any right of privilege information, if any there was, when they decided to violated the rights and privileges of the plaintiff's."  Motion To Compel, Exh. 2 (spelling and grammar errors in source).  No reasonable attorney reading that assertion would have been persuaded to reconsider any privilege that had been asserted.  By making such a ridiculous assertion, Bautista almost guaranteed that the meet-and-confer process would be unsuccessful. Bautista's assertion in the letter that the responses were incomplete does not identify any incompleteness other than that some documents had not been produced because a privilege had been claimed.  Bautista's meet-and-confer effort was not a good faith effort and thwarts the goal of reducing court involvement in the discovery process. The court denies the motion to compel because Bautista failed to make a good faith effort to meet and confer with opposing counsel before he filed the motion.  This denial is without prejudice to Bautista filing a new motion to compel after he engages in a good faith effort to meet and confer with opposing counsel to resolve any discovery dispute.

4

A few words of guidance for the parties in their discovery and resolution of discovery disputes: First, Bautista cannot move to compel responses to requests he has "amended" after the responses have been served. If Bautista wants to request additional or different materials, he must submit a new discovery request to defendants.

Second, a request for production of documents under Rule 34 of the Federal Rules of Civil Procedure can be used only for existing documents. A request for production of documents cannot be used to ask for information to be compiled and questions answered. If Bautista wants information (rather than documents) from defendants, he needs to use other discovery tools, e.g., interrogatories, depositions, or requests for admissions.

Third, the court seriously questions defendants' assertion of privilege for an operations manual or other documents that state standards for jail operations. The court recognizes the need to avoid disclosure of confidential information to inmates -- such as the identity of an informant, or a membership roster for a gang, or a weakness in security that may provide an avenue of escape – but defendants appear to have taken an overly aggressive view of what needs to be kept confidential for safety reasons. The court simply doesn't understand why the Santa Clara County Jail policy and procedure manual must be kept confidential when other penal facilities' written policies and procedures are not shrouded in such secrecy. See U.S. Bureau of Prisons Program Statement 5100.07, Security Designation And Custody Classification Manual, available at http://www.bop.gov/policy/progstat/5100_007.pdf - Nov 30, 2004; Cal. Code Regs. title 15, § 3375 (Cal. Department of Corrections classification procedures). Unless defendants are able to show something unusually sensitive in the jail's manual, it should be disclosed in discovery. The court has considered the Sepulveda declaration but is unable to determine the merits of the asserted need for confidentiality without seeing the manual itself. If defendants contend that the manual cannot be disclosed to Bautista, they may file a motion for a protective order under Federal Rule of Civil Procedure 26(c). If they file such a motion, they should submit the manual under seal for the court to evaluate the claims of confidentiality and should submit a declaration from a knowledgeable person identifying each portion of the manual that they contend must be kept confidential and explaining why it should not be disclosed to Bautista.

Fourth, reports that have been prepared regarding Bautista generally should be disclosed to Bautista except as necessary to preserve jail safety. If defendants contend that the reports concerning Bautista cannot be disclosed to him, they may file a motion for protective order. If they file such a motion, they should submit the reports under seal for the court to evaluate the claims of confidentiality and should submit a declaration from a knowledgeable person identifying each portion of the reports that they contend must be kept confidential and explaining why it presents a risk if disclosed to Bautista. If some portions of a document need to be redacted to prevent the disclosure of confidential information, the court wants to see the unredacted document to determine how much material genuinely needs to be redacted. Counsel is reminded to comply with Local Rule 79-5(b) in filing any document under seal.

D.   Amendment

The court received a document entitled "Plaintiff's Notice To Amend Complaint" on December 16, 2005. Filing such a notice accomplishes nothing. If plaintiff wants to file an amended complaint, he must file a motion to amend and attach to it a proposed amended complaint. Construing the notice to be a motion to amend requires that it be DENIED because the court cannot determine whether to allow an amended pleading without seeing it.

If plaintiff has claims that are against persons other than the existing defendants or are unrelated to the retaliation claims already at issue, he should file a new civil rights action rather than attempt to amend the existing complaint. See Fed. R. Civ. P. 20(a) (persons "may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.")

United States District Court / For the Northern District of California

E.   Conclusion

Defendants' motion for summary judgment is DENIED without prejudice. (Docket # 21.) Bautista's motion to compel is DENIED without prejudice. (Docket # 31.) In light of the denial of the motion to compel, the motion to strike the opposition to that motion is DENIED as moot. (Docket # 41.) To the extent the notice to amend complaint is construed as a motion to amend, it is DENIED. (Docket # 46.)

The court prefers that the discovery problems be resolved before a new summary judgment motion is filed and prefers that any motion for a protective order be resolved before a motion to compel is made as to any remaining discovery disputes. The court therefore sets the following briefing schedule for defendants to move for a protective order on the materials they claim are privileged or otherwise confidential:

1.   Any motion for a protective order must be filed and served by defendants no later than **March 3, 2006**. Defendants are reminded to meet and confer before filing such a motion. See Fed. R. Civ. P. 26(c).

2.   If defendants file a motion for a protective order, plaintiff must file and serve his opposition no later than **April 3, 2006**.

c.   Any reply brief from defendants must be filed and served no later than **April 14, 2006**.

After the court rules on the motion for a protective order (or if no motion is filed by the deadline), the court will set a schedule for plaintiff to file a motion to compel at to any remaining discovery disputes. Plaintiff is reminded that he must engage in a good faith effort to meet and confer to resolve any discovery dispute before he files a motion to compel.

IT IS SO ORDERED.

Dated: January 30, 2006

_____
SUSAN ILLSTON
United States District Judge

7